**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**John F. LEFEBRE, Defendant–Appellant.**

**No. 97CA0958.**

Colorado Court of Appeals,
Div. III.

Nov. 13, 1998.

As Modified on Denial of Rehearing
Dec. 10, 1998.

Certiorari Granted July 26, 1999.*

---

* Justice SCOTT and Justice RICE do not participate.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Peter J. Cannici, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge JONES.

Defendant, John F. Lefebre, appeals from the judgment entered upon jury verdicts finding him guilty of two counts of aggravated robbery and eight habitual criminal counts. We reverse the convictions, vacate the sentences, and remand for a new trial.

## I.

Defendant's primary contention is that the trial court committed reversible error by dismissing three prospective jurors for cause without first allowing defense counsel to question them as permitted under Crim. P. 24(a). We agree.

█ It is fundamental to the right of a fair trial that a defendant be provided with an impartial jury. A defendant's constitutional right to an impartial jury is assured through the voir dire process, the purpose of which is to enable counsel to determine whether any prospective jurors are possessed of beliefs which would cause them to be biased in such

a manner as to prevent the counsel's client from obtaining a fair and impartial trial. *People v. Rodriguez*, 914 P.2d 230 (Colo. 1996).

■■■ While a defendant does not have a constitutional right to voir dire a prospective jury panel, such right is expressly granted under our rules of criminal procedure. *People v. O'Neill*, 803 P.2d 164 (Colo.1990); *People v. Reaud*, 821 P.2d 870 (Colo.App.1991). Indeed, Crim. P. 24(a)(2) provides that "the parties or their counsel *shall* be permitted to ask the prospective jurors additional questions." (emphasis supplied) Thus, while trial courts are vested with discretion to place limitations on the scope and extent of counsel's right to voir dire, it is not within the trial court's discretion to take away that right. *See People v. O'Neill, supra.*

Here, the record reflects that the trial court did not make a record of the proceedings that occurred when the venire panel was first administered the jurors' oath and then given the written questionnaire. Thus, we do not know, and cannot speculate concerning, whether the charges and lists of witnesses were read to the jurors, whether a general outline of the facts was read to them, whether they were instructed about how to fill out their questionnaires, and whether counsel for the parties had any input in instructing and questioning them prior to their receiving the questionnaires.

Each of three prospective jurors indicated on his respective juror questionnaire that he did not believe that he could be a fair juror in this case. The first prospective juror indicated on the questionnaire that he could not be fair because his "sister serves as an expert witness and behavior of DA's staff towards her while I've been present in court room." The second prospective juror's justification for his belief was "[p]rior criminal background." Finally, the third prospective juror indicated that he could not be fair "because my brother has been convicted on the same charges in court."

Based on these responses, the prosecution challenged the three prospective jurors for cause. Over defendant's objection, the trial court excused the prospective jurors, rejecting defendant's argument that he had not

been afforded the opportunity to examine them or to rehabilitate them. The trial court noted counsel's objection, but stated:

> The Court of Appeals is basically taking the position that this whole rehabilitation of jurors who indicate that they cannot be fair is an error. As far as I'm concerned, if they indicate on these questionnaires they cannot be fair they ought to be excused.

■■■ By refusing to allow defense counsel to ask the prospective jurors any questions before excusing them, the trial court deprived defendant of the rights provided by Crim. P. 24(a)(2). While the trial court had the discretion to limit the scope of defendant's examination of the prospective jurors, it had no discretion to deny defendant the right to make all such reasonable inquiries which would have enabled him to determine whether the prospective jurors, regardless of their personal experiences, would have been able to decide the issues based solely upon the evidence and instructions of the court.

The mandatory language of the rule and the statute providing that counsel be allowed to examine potential jurors expresses a strong policy from the General Assembly and the Supreme Court that counsel for the parties not be denied input in the jury selection process as to any potential juror. *See* Crim. P. 24(b)(1)(X); 16–10–103(1)(j), C.R.S.1998; see also *People v. De Lordo*, 350 Ill. 148, 182 N.E. 726 (1932)(while trial court has discretion to limit extent to which attorneys may examine jurors, it may not deny a defendant the right to make inquiries that would enable him to determine whether or not such juror will be free from bias and prejudice in exercising judgment in the case, and that would enable him to exercise his right of peremptory challenge intelligently); *O'Connell v. State*, 480 So.2d 1284 (Fla.1986)(the refusal of trial court to allow defendant to examine two potential jurors before dismissing them could not be justified as an exercise of control of unreasonably repetitious and argumentative voir dire questioning since defendant was not permitted to ask a single question).

Under the record here, we cannot conclude with fair assurance that the three jurors had

states of mind manifesting a bias that would have prevented them from rendering impartial verdicts based solely on the evidence presented and the law as given in the instructions of the court. *See People v. Macrander,* 828 P.2d 234 (Colo.1992). Rather, the subject responses on the three jurors' questionnaires seem to illustrate the rationale for that part of Crim. P. 24(b)(1)(X) that states:

> [N]o person summoned as a juror shall be disqualified by reason of a previously formed or expressed opinion ... if the court is satisfied, *from the examination of the juror* or from other evidence, that he will render an impartial verdict according to the law and the evidence .... (emphasis added)

Absent any record to the contrary here, it is clear that the expressions of the three jurors were no more than "previously formed or expressed" opinions, as to which the trial court had a duty to allow examination so as to determine whether the answers, indeed, were evidence of actual bias. *See People v. Reaud, supra.*

We note that the prosecution did not exercise two of its peremptory challenges during jury selection. That would, presumably, mean that the prosecutor could have used those challenges to remove two of the three jurors in question, if she had still desired to do so after any questioning by both counsel under Crim. P. 24(a)(2) would have been completed.

■ Consequently, even if we were to assume that the doctrine of harmless error and the burden to show prejudice apply in cases such as this, as another division of this court determined in *People v. Evans,* —— P.2d —— (Colo.App. No. 96CA1602, November 13, 1998), we would, nevertheless, conclude that, because only two of the three jurors in question could have been removed by the prosecution through the exercise of peremptory challenges, the denial of defendant's right to voir dire the jurors requires reversal.

## II.

Because the issues may be relevant on retrial, we also consider two other contentions by defendant.

### A.

The Colorado Criminal Code provides that aggravated robbery may be committed in four ways. Section 18–4–302, C.R.S.1998, provides:

(1) A person who commits robbery is guilty of aggravated robbery if during the act of robbery or immediate flight therefrom:

(a) He is armed with a deadly weapon with intent, if resisted, to kill, maim,or wound the person robbed or any other person; or

(b) He knowingly wounds or strikes the person robbed or any other person with a deadly weapon or by the use of force, threats, or intimidation with a deadly weapon knowingly puts the person robbed or any other person in reasonable fear of death or bodily injury; or

(c) He has present a confederate, aiding or abetting the perpetration of the robbery, armed with a deadly weapon, with the intent, either on the part of the defendant or confederate, if resistance is offered, to kill, maim, or wound the person robbed or any other person, or by the use of force, threats, or intimidation puts the person robbed or any other person in reasonable fear of death or bodily injury; or

(d) He possesses any article used or fashioned in a manner to lead any person who is present reasonably to believe it to be a deadly weapon or represents verbally or otherwise that he is then and there so armed.

The prosecution charged defendant with two counts of aggravated robbery under both §18–4–302(1)(b) and §18–4–302(1)(d), C.R.S. 1998. During the trial, at the close of the prosecution's case, defendant requested that the court require the prosecution to elect on which theory of aggravated robbery it wished to proceed. The court denied defendant's

request, and defendant was convicted of both counts and sentenced concurrently.

■ The People concede, and we agree, that the trial court here committed error in entering judgments of conviction on both guilty verdicts of aggravated robbery when both counts were based on the same victim and a single act. Accordingly, on remand, if defendant is convicted on one or both counts of aggravated robbery, the trial court should enter judgment in accordance with *People v. Glover*, 893 P.2d 1311 (Colo.1995), maximizing the effect of the jury's verdicts.

### B.

Defendant contends that the trial court erred in entering judgment concerning the habitual criminal counts because the court failed to advise him separately of the various aspects of his right to testify during the habitual criminal trial. We disagree.

In *People v. Curtis*, 681 P.2d 504 (Colo. 1984), and its progeny, our Supreme Court has determined that it is reversible error to fail to advise a defendant of his or her right to testify and of the consequences of the exercise of or the waiver of that right. That advisement must be outside the presence of the jury, and on the record so that the defendant's choice pursuant to the advisement may be reviewed as to whether it was knowing, intelligent, and voluntary. See *People v. Chavez*, 853 P.2d 1149 (Colo.1993); *People v. Milton*, 864 P.2d 1097 (Colo.1993).

Concerning the prospect of a *Curtis* advisement in the habitual criminal phase of a trial, the Supreme Court has indicated that there is no need for such, because, among other things, such could needlessly confuse a defendant, and ultimately the jury, concerning the fact that even his or her testimony in that phase can be considered only for impeachment purposes and that the prosecution has an ongoing duty to prove the substantive charges of the habitual criminal counts with evidence other than the defendant's testimony. See *People v. Gray*, 920 P.2d 787 (Colo. 1996).

■ Thus, here, the trial court did not err in not giving a *Curtis* advisement during the habitual criminal phase. We would note, however, that when, as here, an inordinate amount of time passes between the substantive case and the habitual criminal phase (here, four weeks), a record that reflects that the defendant has had his knowledge of his right to testify refreshed, with an intelligent exercise of or waiver of such right, surely cannot be a bad thing, and would seem to be the better practice. Under such circumstances, making a defendant newly knowledgeable about his right to testify would appear to outweigh in importance the possibility of confusion concerning the prosecution's ongoing burden of proof.

We need not consider defendant's remaining contention.

The judgments of conviction and sentence are vacated, and the cause is remanded for a new trial in accordance with the views expressed herein.

Chief Judge HUME and Judge RULAND concur.